THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| JOHNNY G. PILGREEN | * | CIVIL ACTION NO. 05-2154 |
| Versus | | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

Before this Court, on consent from the parties and pursuant to the standing order of the District Judge, is an Appeal from a decision of the Commissioner of Social Security ("Commissioner") filed on behalf of Petitioner, Johnny G. Pilgreen ("Pilgreen"). For the reasons assigned herein, the decision of the Commissioner is hereby **AFFIRMED, and this matter is DISMISSED WITH PREJUDICE.**

Background & Procedural History

Pilgreen filed his application for disability insurance benefits on October 14, 2004. His claims were denied initially and a hearing before ALJ Howard K. Treblin was held on August 16, 2005 in Monroe, Louisiana. Pilgreen has a high school education and past work experience as a delivery truck driver with United Parcel Service ("UPS"). Pilgreen was 45 years old at the time of his hearing. He alleges that he became disabled on February 20, 2004 due to a sleep disorder. The ALJ found Pilgreen had a "severe" idiopathic central nervous system hypersomnia[1] impairment. Pilgreen was assessed with a residual functional capacity ("RFC") to perform work

---

[1] Recurrent daytime sleepiness without the abrupt sleep attacks classically seen in narcolepsy. (Tr. 110).

at all levels of exertion, reduced by the inability to climb ladders and stairs, drive automotive equipment, and work around dangerous moving machinery and unprotected heights. The ALJ found, based on vocational expert ("VE") testimony, that there were a significant number of jobs in the national and regional economy that Pilgreen could perform. Specifically, the ALJ found that Pilgreen could work as a route delivery clerk or a change house attendant. The ALJ's determination was made on September 12, 2005, and the Appeals Council affirmed the decision on November 5, 2005.

Pilgreen argues that the ALJ misused the testimony of the VE when denying social security benefits and therefore, the ALJ's decision is not supported by substantial evidence.

Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the

3

Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Analysis

At Pilgreen's hearing, the ALJ asked vocational expert Mary Walker the following questions:

> ALJ: Now, let's assume we have an individual of the Claimant's age, education, past relevant work experience. He doesn't have any exertional limitations. He doesn't have any postural limitations. Doesn't have any problems using his hands or his extremities. However because of the idiopathic hypersomnia, he would need to avoid unprotected heights, wouldn't be able to climb ladders, or stairs. He would have to avoid dangerous moving machinery. Would not be able to drive. Now, assuming that set of factors, are there jobs either his past work or other jobs that exist in the national economy that could be performed with that set of limitations?
>
> VE: He would not be able to perform his past work due to the driving. There are other jobs that he could perform based on his transferable skills. At the light duty level, he could perform the job of route delivery clerk. It is DOT Number 222.587-034. It's light duty. It's semi-skilled, 3. ... Nationally there are 34,111 of these jobs. In Louisiana there are 3,334 of these jobs. And in Texas there are 2,123 of these jobs.
>
> ALJ: What transferable skills does he have from his prior work?
>
> VE: Gathering, organizing, and recording numerical or other information accurately, analyzing and classifying documents, following established procedures, recognizing errors in printed copy.
>
> ALJ: Now, are there any unskilled jobs that he would be able to perform?

4

| | |
|---|---|
| VE: | Yes, sir. He could perform the job of change house attendant. ... |
| ALJ: | What is that? |
| VE: | It is – he had no exertional limits. Maintains building such as locker room of golf club, change house or [*sic*] of mining camp or shower facilities of industrial plant in which patrons or workers shower and change clothes. Sweeps floor and scrubs shower stalls using broom, brushes, and soap and water. Opens windows to control ventilation or adjusts controls of automated heating, cooling, or dehumidifying unit to maintain healthful and comfortable conditions. May fire boiler to heat water for bathing or heating facility. May place contaminated work clothes in vacuum chamber for removal of toxic chemical dust. May requisition and issue supplies such as soap, towels, and protective clothing. It's a medium duty. It has an unskilled level of 2. Nationally there are 127,711 of these jobs, in Louisiana there are 1,780 of these jobs and in Arkansas there are 1,271 of these jobs. |
| ALJ: | Let's assume that we have an individual the Claimant's age, education, past relevant work experience and has the same limitations that I've previously indicated, [*sic*] however I'm going to add to it that because of the hypersomnia several times throughout the week, at least three to four times throughout the week he would have events that would render him unable to recognize and avoid common workplace hazards, would not be able to comply with production requirements in terms of quality or quantity because of the inability to maintain attention and concentration during these episodes, and as indicated, wouldn't be able to drive, wouldn't be able to operate machinery, would have to avoid unprotected heights, ladders, stairs, that kind of a thing. Now, if he had that set of factors occurring throughout the work week as well as the work month, would he be able to perform past work or other work? |
| VE: | No, sir. ... |
| ATTY: | Ms. Walker, I understand that the first couple of hypotheticals in which you indicated jobs available including a route delivery clerk and ... change house attendant, that in finding those jobs you did not take into account the Claimant's, the Claimant having long periods of daytime drowsiness leading to hyper sleeps and impaired performance. |
| VE: | That's correct. |

(Tr. 49-52).

5

Pilgreen argues that the first question asked of the VE did not provide her with all of his non-exertional impairments. Pilgreen believes the ALJ should have asked the VE to assume that he had "long periods of daytime drowsiness leading to micro sleeps and impaired performance." Pilgreen argues that the second hypothetical asked of the VE, in which the VE concluded there were no jobs available, more closely resembled his actual non-exertional limitations.

Hypothetical questions to a VE must set out all of the claimant's limitations supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir.2002). The ALJ is not bound by VE testimony which is based upon evidentiary assumptions not supported by medical evidence. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985). The first hypothetical question asked of the VE included Pilgreen's RFC determination, including all limitations.

Pilgreen testified that his micro sleep episodes occur at variable frequencies such as once every three days and lasting for three to four seconds. (Tr. 37-39). He also testified that he sees his treating physician every three to six months. (Tr. 40). Pilgreen's intermittent symptoms and insignificant medical treatment contradict his allegations of disabling limitations.

In addition, Pilgreen reported significant daily activities, which contradict his allegation of total disability. Pilgreen reported that he could perform activities such as household chores, personal care, preparing meals, home repairs, mowing the lawn, walking, driving a car, shopping, using a computer, handling finances, watching television, fishing, attending church, and paying attention "normally." (Tr. 81-88).

There is no objective medical evidence to support Pilgreen's allegation of total disability. Subjective complaints must be corroborated, at least in part, by objective evidence. *Houston v.*

*Sullivan*, 895 F.2d 1012, 1016 (5th Cir.1989). Dr. Thompson's treatment notes state that Pilgreen is "doing ok" and the prescribed medication Ritalin is helping his condition. (Tr. 114). Dr. Thompson has prescribed Pilgreen to take 10 mg of Ritalin 5 times per day and has not adjusted the dosage or frequency of medication. (Tr. 90, 115, 116, 120). A medical condition that can be remedied by medication is not disabling. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

On November 12, 2003, Dr. Thompson reported that Pilgreen was "doing well" and was "not having any sleepiness that would be considered excessive." Pilgreen's Epworth Sleepiness Scale was 2 out of 21, with 12 or greater considered to be excessive sleepiness. (Tr. 120).

On January 14, 2004, Dr. Thompson reported that Pilgreen had been switched from Ritalin to Provigil, but that the Provigil was not as effective as the Ritalin. Dr. Thompson opined that Pilgreen "does not have suggestion of excessive daytime sleepiness. From my point of view, he is released to return to work as a truck driver." (Tr. 118).

On April 7, 2004, Dr. Thompson reported that Pilgreen

> had been working for UPS. The Department of Transportation plus UPS just don't allow people with this diagnosis to drive really regardless of how well their symptoms are controlled. In addition, apparently UPS is very reluctant to provide him with alternative employment because of their fears of liability if he were to have any problems. ... He is on short-term disability which runs out in September. He is supposed to get five years of long-term disability. There is the whole issue of whether or not he would qualify for Social Security disability and if he did not, if he would be employable because of the underlying problem. May eventually try to refer him to vocational rehab and other things.

(Tr. 117).

On August 19, 2004, Dr. Thompson reported that Pilgreen was stable and that his symptoms improved, but are not completely controlled. "He is felt to be disabled from his occupation, which was a truck driver." (Tr. 115).

7

The record also contains a page signed by Dr. Thompson and dated July 12, 2005, that gives a summary of Idiopathic Central Nervous System Hypersomnia. The "Functional Impairments, Restrictions, and Cautions Resulting from this Diagnosis" reads:

> A very disabling illness, which often leads to permanent unemployment and responds poorly to medication. This is a chronic and lifelong disability. It's [*sic*] symptoms causes [*sic*] patients to continue to function in an unplanned and often inappropriate way during drowsiness and microsleep episodes. At times the severity of the impairment can place lives in jeopardy.

(Tr. 121). Dr. Thompson's report does not specifically state that <u>Pilgreen's</u> condition has responded poorly to medication or that his condition is so severe as to put lives in jeopardy, but instead make generalizations about patients with Idiopathic Central Nervous System Hypersomnia. Furthermore, Dr. Thompson's treatment records do not support Pilgreen's allegation of total disability. Therefore, to the extent that Dr. Thompson's July 12th letter constitutes an opinion that Pilgreen is totally disabled, that opinion is conclusory and may be rejected by the ALJ because the determination of disability is reserved to the Commissioner. *See Frank v. Barnhart* 326 F.3d 618, 620 (5th Cir.2003); 20 C.F.R. § 404.1527.

Vocational decisions are also reserved to the Commissioner. 20 C.F.R. § 404.1527. The ALJ adequately reflected Pilgreen's disorder in his RFC finding. The ALJ found that Pilgreen was precluded from climbing ladders and stairs, driving automotive equipment, or working around dangerous moving machinery and unprotected heights. (Tr. 15). The ALJ reasonably incorporated all the impairments he accepted in the hypotheticals proffered to the VE and properly excluded those which he found were not supported by the evidence.

Because there is substantial evidence to support the ALJ's ruling that Pilgreen was not

8

disabled from performing all work, the decision of the Commissioner of Social Security is hereby

**AFFIRMED, and this matter is DISMISSED WITH PREJUDICE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 31st day of July, 2006.

_(signature)_
KAREN L. HAYES
U. S. MAGISTRATE JUDGE